IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURIE M. HARBERTS                    Case No. 3:14-cv-1140-MA

           Plaintiff,                OPINION AND ORDER

   v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

         Defendant.

PHILIP M. LEBENBAUM
Hollander Lebenbaum & Gannicott
1500 S.W. First Avenue
700 Crown Plaza
Portland, OR 97201

    Attorney for Plaintiff

RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

ALEXIS L. TOMA
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Laurie M. Harberts seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on December 16, 2010 and an application for SSI on December 16, 2011, alleging disability beginning November 29, 2009, due to depression; hydro thyroid disease; bipolar one; severe anxiety and panic attacks; low metabolism; and muscle spasms. Plaintiff meets the insured status requirements for a DIB application through December 31, 2014.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on May 16, 2013, at which plaintiff appeared with her attorney and testified. A vocational expert, C. Kay Wise, and plaintiff's sister, Carrie Leigh DeSoto also appeared at the hearing and testified. On June 6,

2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1957, plaintiff was 56 years old on the date of the ALJ's unfavorable decision. Plaintiff has a ninth grade education. Plaintiff has past relevant work as a seafood clerk and smoker operator.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since November 29, 2009. At step two, the ALJ found that plaintiff had the following severe impairments: anxiety; panic disorder with agoraphobia; depression; post-traumatic stress disorder (PTSD); and cannabis dependence. At step

three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to a full range of work at all exertion levels as defined in 20 C.F.R. § 404.1567 but with the following additional nonexertion limitations. Plaintiff can learn, remember, and perform simple, routine and repetitive work tasks, involving simple one and two step work instructions. Plaintiff can perform low-stress work defined as jobs with no strict production pace, few workplace changes, and no "over the shoulder" supervision. Plaintiff can have occasional contact with supervisors and coworkers, but should have minimal to no contact with the public and requires ready access to restroom facilities in the workplace.

At step four, the ALJ found that plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as soft goods sorter, cleaner II, and box filler. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from November 29, 2009, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate plaintiff's testimony; and (2) the ALJ erred in weighing opinion evidence from plaintiff's counselors.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

5 - OPINION AND ORDER

**DISCUSSION**

I.   **The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

   A.   **Standards**

   To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform a two stage analysis. 20 C.F.R. § 404.12629. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

   The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities,

6 – OPINION AND ORDER

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B. Analysis

At the hearing, plaintiff testified that she experiences one to two panic attacks every day and increased anxiety with uncontrollable diarrhea. Tr. 37. Plaintiff testified that she fears leaving her home because she does not want to have a panic attack out in public. *Id.* Plaintiff testified that she carries a diaper bag with her that contains extra change of clothes and baby wipes in the event of an accident. Tr. 39. Plaintiff also testified that when she experiences a panic attack she takes medication and lays down for 20-30 minutes for the medication to begin working. Tr. 44.

In a June 13, 2011 Activities of Daily Living (ADL) Report, plaintiff noted that she is unable to focus or concentrate and has difficulty working with others. Tr. 224. Plaintiff described a typical day as performing minor chores such as pulling weeds outside for an hour, running errands nearby, cleaning dishes and watching television. Tr. 225. Plaintiff indicated that she prepares daily meals such as sandwiches and frozen meals. Tr. 226. Plaintiff also noted performing household chores such as laundry and cleaning. Plaintiff indicated that she leaves her house daily to go shopping for groceries and personal items. Tr. 227. Plaintiff further noted that she can pay attention for only one to two

minutes and has difficulty following instructions such as a recipe. Tr. 229. Plaintiff also stated that she has difficulty interacting with supervisors. *Id.*

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided four clear and convincing reasons, citing specific record evidence, which undermine her subjective complaints.[1]

### 1. inconsistent with objective medical evidence

The ALJ specifically found plaintiff's subjective allegations of debilitating mental limitations inconsistent with the medical record. Tr. 419. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

---

[1] Plaintiff asserts that her allegations regarding panic attacks are supported by the testimony of her sister, Carrie DeSoto. Although plaintiff does not challenge the ALJ's assessment of Ms. DeSoto's lay testimony, after careful review of the record, I conclude that the ALJ's accordance of "some weight" to Ms. Desoto's testimony is supported by substantial evidence. Thus, plaintiff's argument is meritless.

In the decision, the ALJ noted that plaintiff's mental health treatment notes do not support her allegations of daily severe panic attacks. Tr. 16. For example, as the ALJ noted, in March 2011, plaintiff reported doing much better since she started taking lithium. Treating physician's assistant, Lily McCauley noted that plaintiff's mood had improved, and she no longer experienced panic attacks. Tr. 292. Although plaintiff agreed to re-start counseling at this appointment, the record shows that she did not actually resume mental health counseling until November 2011. *Id.*; Tr. 348.

Moreover, the ALJ cited to the psychological evaluation of consultative examiner, Gary Sacks, Ph.D. In an August 5, 2011 examination, Dr. Sacks observed normal psychomotor activity, a subdued affect and spontaneous and fluent speech. Tr. 314. Plaintiff scored a 30 out of 30 on a mini-mental status examination, and Dr. Sacks opined that plaintiff's score indicated intact cognition for simple tasks. *Id.* Dr. Sacks diagnosed bipolar disorder I and panic disorder with agoraphobia. Tr. 316. Dr. Sacks noted that plaintiff's medical records indicate that lithium has helped to control her mania symptoms. Tr. 317.

Plaintiff's treatment notes also support the ALJ's reasoning, documenting relatively normal mental status examination findings. For example, in January 2012, treating nurse practitioner, Irene Holland observed good eye contact, good hygiene, and intact insight and judgment. Tr. 354. In fact, Ms. Holland noted that although

plaintiff presented an irritated mood about being depressed and anxious, plaintiff appeared "so well." *Id.* In May 2012, plaintiff's treatment provider noted that although plaintiff reported feeling anxious, she appeared calm. Tr. 369. Another treatment note in February 2013 indicated normal speech and thought content; depressed mood; and good attention and concentration. Tr. 387.

In short, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

### 2. activities of daily living (ADLs)

As the ALJ correctly noted, plaintiff's variety of activities of daily living are inconsistent with the level of disability she alleges. For example, plaintiff testified at the hearing that she is the primary caregiver of her bedridden mother since February 2013 and received earnings from the state of Oregon as a home-health care provider. Tr.32; 185-190. Plaintiff prepares all her mother's meals, attends to her mother's bathing and personal care and laundry. Tr. 32. Plaintiff testified that she earns a net payment of $650 every two weeks. Tr. 47. The ALJ also noted that plaintiff's allegations that she cannot focus and concentrate for more than one to two minutes are "belied by the fact that the claimant has been entrusted with the full-time care of her elderly mother." Tr. 18.

While a claimant need not be completely incapacitated to be eligible for disability, here the record shows that plaintiff's activities are fairly extensive. As the ALJ stated, plaintiff's own functioning does not support the frequency, nature, and severity of her alleged mental symptoms and limitations. For example, while plaintiff testified at the hearing that her anxiety prevents her from leaving her house, plaintiff reported in a June 13,2011 ADLs report that she leaves her home on a daily basis and goes grocery shopping on a weekly basis. Tr. 227. Plaintiff also cares for two dogs and reported reading, painting and crocheting several times a week. Tr. 228.

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because her level of activity is inconsistent with the degree of impairment that she alleges. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

In sum, I conclude the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount plaintiff's testimony.

### 3. inconsistent statements

The ALJ also appropriately discredited plaintiff's testimony on the basis of inconsistent statements regarding her marijuana use. As the ALJ noted, plaintiff minimized her marijuana use to her

11 - OPINION AND ORDER

treatment providers. Tr. 17. At the 2013 hearing, plaintiff testified to using marijuana daily for twenty years, but stopped using marijuana two years ago. Tr. 46. In contrast, plaintiff reported to a treatment provider in December 2011 that she had been smoking marijuana daily for the past year. Tr. 362. The ALJ further noted that although plaintiff reported viewing her use of marijuana as "self-medication," the record does not indicate that "she has a medical marijuana card." Tr. 327.

The record further supports the ALJ's reasoning. For example, plaintiff denied the use of drugs or alcohol to Dr. Sacks during the August 2011 consultative examination. Tr. 316. In December 2011, examining physician, Jamie Read M.D. diagnosed plaintiff with cannabis dependence. Tr. 337. In fact, Dr. Read encouraged plaintiff to cease use of marijuana and noted that it is likely exacerbating her anxiety. Tr. 338. The ALJ's findings are supported by the record. Thus, I conclude that the ALJ appropriately discredited plaintiff on the basis of inconsistent statements.

### 4. sporadic work history

The ALJ cited to plaintiff's poor work history to suggest plaintiff lacks a propensity to work. Tr. 17. Evidence of a poor work history which suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that she is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). As the ALJ correctly noted, plaintiff had little to no

earnings from 1992 through 1998 or in 2002. Tr. 18, 178. Plaintiff
testified at the hearing that she lived off death benefits after
her husband's death and stayed home to care for her children. Tr.
42. However, plaintiff's work history also shows a gap in
employment from 1985 through 1987. Based on the evidence in the
record, the ALJ properly discounted plaintiff's testimony on the
basis of her sporadic work history. Even setting this reason aside,
after a careful review of the record, I conclude that ALJ's three
remaining reasons, when taken together, constitute clear and
convincing reasons, supported by substantial evidence to discount
plaintiff's testimony.

## II.  **The ALJ Did Not Err in Evaluating Other Opinion Evidence**

Lay witness testimony as to how a claimant's symptoms affect
her ability to work is competent evidence, which the ALJ must take
into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009);
*Stout v. Commissioner of Soc. Sec. Admin*, 454 F.3d 1050, 1053 (9th
Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).
The ALJ is required to account for competent lay witness testimony,
and if it is rejected, provide germane reasons for doing so.
*Valentine*, 574 F.3d at 694.

In assessing opinion evidence, the ALJ considered but
decidedly gave no weight to the April 25, 2013 opinions of treating
licensed professional counselor, Carli Jo Nicholson and treating
psychiatric mental health nurse practitioner, Jennifer Reffel. Tr.

19. Both opinions did not include plaintiff's name or identify plaintiff in any other manner (facts or by reference); among other reasons, the ALJ cited to the lack identifying information as one reason to give no weight to their opinions.

Both treatment providers opined that plaintiff's impairments met the criteria of Listing 12.06 (anxiety-related disorders). Tr. 471-474. Specifically, both treatment providers opined that plaintiff's impairment met Part A of Listing 12.06 and that plaintiff meets Part B of Listing 12.06 with regard to marked restrictions in the areas of activities of daily living and social functioning. Tr. 472, 474. Moreover, Ms. Nicholson also opined that plaintiff has marked difficulties in maintaining concentration, persistence and pace and has experienced repeated episodes of decompensation. Tr. 472.

Plaintiff argues that the ALJ erred in assigning no weight to the opinions of Ms. Nicholson and Ms. Reffel and challenges the ALJ's rationale that the opinion evidence was not tied to plaintiff in any way. Plaintiff contends that the opinions were submitted along with a cover letter to the ALJ, which contained plaintiff's attorney's request for opinions from Ms. Nicholson and Ms. Reffel. In support of this argument, plaintiff filed a motion to correct the transcript and requested to amend the record to include new evidence of plaintiff's attorney's April 30, 2013 cover letter. *See* Pl.'s Motion to Correct Transcript (ECF No. 19).

14 - OPINION AND ORDER

Contrary to plaintiff's argument, the ALJ did not err in rejecting Ms. Nicholson's and Ms. Reffel's opinions. After carefully reviewing the record and considering the additional evidence submitted by plaintiff, I conclude that the ALJ provided several other germane reasons for rejecting the opinions of Ms. Nicholson and Ms. Reffel. Therefore, plaintiff's motion to correct the transcript is moot. *See* Pl.'s Motion to Correct Transcript (ECF No. 19).

First, the ALJ discredited the opinions of Ms. Nicholson and Ms. Reffel on the basis that they are not acceptable medical sources as defined under the social security regulations.[2] Tr. 19; 20 C.F.R. §§ 404.1513(d), 416.913(d). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources" such as a nurse practitioner or physician's assistant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996)(overruled on other grounds). Accordingly, the ALJ provided a germane reason for giving no weight to this opinion evidence.

---

[2] The opinion of a physician's assistant or nurse practitioner is not considered an acceptable medical source, unless the physician's assistant worked under a physician's close supervision. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)(holding that a nurse practitioner could be considered a medically acceptable source where she worked under a physician's close supervision such that she acted as the physician's agent). In this case, plaintiff does not allege that Ms. Nicholson or Ms. Reffel are acceptable medical sources, and the record does not reflect that either Ms. Nicholson or Ms. Reffel worked under a physician's close supervision.

Second, the ALJ cited to the inconsistency between the opinions of Ms. Nicholson and Ms. Reffel and their treatment notes. For example, in a November 2012 examination, Ms. Reffel noted plaintiff was well dressed and presented with good hygiene and depressed mood with a content affect. Tr. 429. Ms. Reffel also noted normal speech, logical thought process, and good judgment. *Id.* In January 2013, Ms. Reffel noted that plaintiff's symptoms have improved since changing her medication to klonopin. Tr. 398. Ms. Reffel noted that plaintiff does not experience panic once leaving her home and has not had a severe panic attack since changing medications. *Id.* In a February 2013 examination, Ms. Reffel observed a depressed mood but normal speech and thought process; intact recent and remote memory; and good attention and concentration. Tr. 387. Moreover, in March 2013, Ms. Nicholson noted that plaintiff felt encouraged by her progress and no longer experiences nightmares. Tr. 385.

Furthermore, the ALJ cited several other germane reasons that I decline to discuss.[3] To be sure, plaintiff does not challenge the ALJ's step three finding or the ALJ's RFC finding, which are

---

[3] Plaintiff contests the ALJ rejecting the opinions of Ms. Nicholson and Ms. Reffel on the basis that these reports were solicited by plaintiff's attorney within a few weeks of her hearing. The Commissioner concedes that this does not constitute a germane reason for rejecting the opinion reports. Nevertheless, as the Commissioner correctly asserts, the ALJ provided several other germane reasons for according no weight to these opinions. Thus, plaintiff's argument fails.

supported by substantial evidence. Accordingly, as discussed above, the ALJ provided two germane reasons for rejecting the opinions of Ms. Nicholson and Ms. Reffel. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)(ALJ provided germane reasons for rejecting portions of lay testimony that was inconsistent with claimant's activities and objective evidence).

<u>**CONCLUSION**</u>

For the reasons stated above, the Commissioner's final decision is AFFIRMED. Plaintiff's Motion to Correct the Transcript (ECF No. 19) is DENIED as moot. This action is DISMISSED.

IT IS SO ORDERED.

DATED this ___9___ day of JULY, 2015.

Malcolm F. Marsh
United States District Judge